| |
|---|
| **O'Hara v Bond** |
| 2024 NY Slip Op 34189(U) |
| November 26, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 522051/2022 |
| Judge: Ingrid Joseph |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 83 of the Supreme
Court of the State of New York, held in and
for the County of Kings, at the Courthouse, at
360 Adams Street, Brooklyn, New York, on
the 26ᵀᴴ day of November , 2024.

P R E S E N T: HON. INGRID JOSEPH, J.S.C.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
JOHN O'HARA, both individually and in his official
Capacity on behalf of O'HARA FOR SENATE, and
O'HARA FOR SENATE,

                                 Plaintiffs,
              -against-                                              Index No.: 522051/2022


MATTHEW BOND, ANDREY BYSTROV, and
DAN JOHNSON, individually and in their official capacity          **DECISION AND ORDER**
as partners of BRYANTBYSTROV, LLC, and                               (Mot. Seq. No. 1)
BRYANTBYSTROV, LLC,

                                 Defendants.
-------------------------------------------------------------------------X

The following e-filed papers read herein:                    NYSCEF Doc. Nos.:

Notice of Motion/Affirmation//Exhibits/Memorandum of Law...............    2 – 8
Affirmation in Opposition/Exhibits........................................................    30 – 37
Reply Affirmation.................................................................................    47

Defendants Matthew Bond, Andrey Bystrov, Dan Johnson and BryantBystrov, LLC
(political consulting firm, "BB LLC") (collectively, "Defendants") move for an order, pursuant to
CPLR 3211(a)(1), (7) and (8), dismissing Plaintiffs John O'Hara ("Plaintiff") and O'Hara for
Senate's complaint (Mot. Seq. No. 1). Plaintiffs oppose the motion.

As an initial matter, the Court notes that this action arises out of Plaintiff's unsuccessful
candidacy for a New York Senate seat on the Primary Election ballot on August 23, 2022. In order
to run for elective office, a candidate must comply with Section 6-118 of the Election Law, which
provides, in part, that "the designation of a candidate for party nomination at a primary election
and the nomination of a candidate for election to a party position to be elected at a primary election
shall be by designating petition" (Election Law § 6-118). The Board of Elections defines a

[* 1]

"petition" as "one or more sheets, which may be filed with the Board in one or more volumes, together with any required cover sheet, which nominate the same candidate for a particular public office."[1] Election Law proffers the requirements for the form of the designating petition and the number of signatures, depending on which public office the individual is running for (*see* Election Law §§ 6-134, 6-135). Written objections to the designating petition(s) may be filed with specifications of objections, including the total number of signatures objected to (*see* Election Law § 6-154).

On or about August 1, 2022, Plaintiffs filed a summons and complaint in which they allege that Plaintiff and Defendant Bond, a partner at BB LLC, entered into a contract on May 19, 2022, for $20,771, in exchange for the collection of 1,700 signatures from registered democrats within New York Senate District #17. Plaintiff asserts that he paid BB LLC $22,771, the original contracted amount plus an additional $2,000 requested by BB LLC. According to Plaintiff, when it became clear that BB LLC would not get 1,700 signatures he hired a second vendor[2] in anticipation of BB LLC's breach of the contract. Plaintiff asserts that BB LLC breached the contract when it informed him on June 10, 2022, that only 1,515 signatures would be delivered. Thereafter, on June 10, 2022, Plaintiff filed four volumes of designating petitions containing 2,437 signatures.

According to Plaintiff's petition filed against the Board of Elections under index number 517420/2022 (the "Election Action"), two individuals filed general objections to invalidate the designating petitions on or about June 13, 2022 (index No. 517420/2022; NYSCEF Doc No. 1). On June 20, 2022, Plaintiffs allege that the Board of Elections issued a Clerk's Report indicating that only 634 signatures were valid, and 956 out of the 2,437 signatures were gathered outside of Senate District #17. Ultimately, the Commissioners of the Board of Elections determined that Plaintiff did not meet the required 850 signatures to be placed on the ballot for the Senate Democratic Primary. Plaintiff alleges that he contacted Bond to hire BB LLC to do a "Reverse Specification" ("reverse spec") in an attempt to declare the 216 signatures necessary to qualify as

---

[1] Board of Elections in the City of New York, *Designating Petition & Opportunity to Ballot Petition Rules for Primary Elections*, available at https://vote.nyc/sites/default/files/news/2022-03/Designating_Petition_OTB_Rules_FINAL_Adopted_on_2_15_22.pdf (last accessed Nov. 13, 2024).

[2] Plaintiff does not identify (i) the name of this alleged second vendor, (ii) the date it was hired or (iii) how much it was paid.

a candidate. Plaintiff further alleges that Bond "volunteered" to do the reverse spec and after delivering the requested documents, Bond did not respond to any of Plaintiff's correspondences.

In the Election Action, a court-appointed referee determined that only 567 signatures were valid. Plaintiff avers that O'Hara for Senate incurred $84,856 in legal fees and costs related to the election law proceedings. Plaintiffs assert causes of action for (1) breach of contract for failing to do the work pursuant to their agreement, (2) fraud for making false representations, and negligence for (a) failing to collect signatures within the district, (b) failing to verify that the signatures collected were of registered democrats and (c) failing to know that the voters were registered within the district.

Defendants now move to dismiss the complaint on three grounds. First, under CPLR 3211(a)(8), Defendants assert that BB LLC has not been served with the complaint[3] and Plaintiffs have not filed any affidavits of service.

Second, Defendants also claim that the contract serves as documentary evidence under CPLR 3211(a)(1), refuting Plaintiffs' allegations as to its terms. Specifically, Defendants aver that the contract was for 1,700 signatures *or* 95 total shifts. Since the complaint is silent as to the number of shifts deployed by Defendants, Plaintiffs are precluded from proving the breach of contract claim. In addition, though the contract provided for a payment of $20,771, only $17,000 was invoiced and paid. Moreover, the complaint alleges $84,856 in attorney's fees and costs, but Defendants argue that O'Hara for Senate reported paying their election attorney only $2,500.

Third, Defendants argue that the complaint should be dismissed under CPLR 3211(a)(7). As to the individual defendants, Defendants assert that dismissal is mandated because Plaintiffs have not sufficiently plead facts required to pierce the corporate veil. In particular, Defendants contend that Plaintiffs have not alleged any facts that would establish the individual defendants' complete domination and control of the corporate entity. Defendants further argue that Plaintiffs fail to state a cause of action for fraud. Defendants aver that (a) Plaintiffs cannot prove the scienter element of fraud and (b) the fraud claim is duplicative of the breach of contract claim. With respect to Bond's alleged promise to conduct a reverse spec, Defendants assert that breaking a promise to do a favor does not constitute fraud. In addition, Defendants claim that Plaintiffs' negligence claim

---

[3] Defendants initially argued that Dan Johnson also had not been served. However, after a court conference, the action against Johnson was dismissed because there was no affidavit of service. Moreover, in their opposition, Plaintiffs conceded that they did not serve Johnson.

3

[* 3]

is duplicative of their breach of contract claim since it pertains to the collection of signatures. Additionally, with respect to their negligence claim, Defendants assert that Plaintiffs cannot prove causation since they admitted to hiring a second vendor, who could have been the source of the challenged signatures. Finally, Defendants contend that Plaintiffs also failed to state a cause of action for breach of contract. If there was no waiver, Defendants claim that Plaintiffs did not perform under the contract because only $17,000 of the $20,771 was paid. Since Plaintiffs state that Defendants gathered 2,437 signatures, Defendants assert that this meets the 1,700-signature requirement in the contract. If Plaintiffs allege that only 1,515 signatures would be or were delivered by Defendants, then Defendants' contractual obligation would still be satisfied if they deployed more than 95 shifts. Without establishing the number of canvassing shifts provided, Defendants maintain that Plaintiffs cannot establish a breach of contract.

In opposition, Plaintiffs argue that BB LLC was properly served through the Secretary of State and attach an affidavit of service reflecting service on August 9, 2022. With respect to Defendants' "piercing the corporate veil" argument, Plaintiffs argue that the subject contract was signed by Bond and the defective signatures were personally gathered, and their collection supervised, by Bond and defendant Andrey Bystrov. Plaintiffs further assert that Bond and Bystrov committed fraud when they submitted fraudulent signatures for Plaintiffs to file with the Board of Elections. In addition, Plaintiffs claims that Bond also committed fraud by convincing Plaintiff to turn over the only copy of the designating petition depriving him of a chance to file a reverse spec, entitling Plaintiff to treble and punitive damages. Plaintiff alleges that Bystrov was made aware of all the communications between Plaintiff and Bond. With respect to their negligence claims, Plaintiffs argue that Defendants ignore the fact that the contract required them to obtain signatures from registered democrats in District #17. Plaintiffs further assert that their negligence claim is specifically pled because the complaint states that out of the 1,515 signatures collected by Defendants, only 198 were valid. As to their breach of contract claim, Plaintiffs contend that they pled all the elements in a nonconclusory manner. Plaintiffs assert that (a) Defendants advised Plaintiff that they would not be meeting the contracted goal of 1,700 signatures; (b) the court in the election law case determined that 4 out of the 5 signatures collected by Defendants were invalid; (c) the clerk's report issued by the Board of Elections determined that some signatures were not from registered democrats within District #17; and (d) Plaintiff hired another vendor at a cost of approximately $20,000 to make up for Defendants' anticipated breach.

[* 4]

In their reply, Defendants maintain that the complaint should be dismissed as to Bond and Bystrov because they cannot be held personally liable. In addition, Defendants argue that Plaintiffs' complaint and opposition are silent as to how the individual Defendants abused the privilege of doing business in the corporate form. Since defendant Johnson is no longer in this case, Defendants argue that Plaintiffs cannot prove that Bond and Bystrov exercised complete domination over BB LLC. Defendants further argue that none of the facts alleged in the complaint could give rise to the independent tort of fraud. Moreover, since Plaintiffs seek to plead a cause of action for negligence under the same facts for the alleged breach of contract, Defendants assert that it is duplicative. With respect to Plaintiffs' breach of contract claim, Defendants reiterate that the complaint is silent as to the number of shifts deployed and contains multiple references to 2,437 signatures gathered by Defendants, which would satisfy the contract. Defendants also point out that Plaintiff did not address their accord and satisfaction argument. In addition, Defendants argue that the contract does not guarantee that all or any stated number of signatures would be deemed valid or that Plaintiff would qualify for the ballot. Further, Defendants contend that during the subject petitioning period, senatorial district lines were ruled unconstitutional and new lines had to be drawn,[4] resulting in uncertainty that Plaintiff himself acknowledged in the Election Action.

The Court will first address Defendants' motion to dismiss the action as against BB LLC under CPLR 3211(a)(8). In their opposition, Plaintiffs attached as an exhibit a copy of an affidavit of service on BB LLC reflecting service upon the Secretary of State on August 9, 2022. Defendants' opposition does not address, let alone contest, the presumption of proper service. Accordingly, the branch of Defendants' motion seeking to dismiss the complaint against BB LLC for lack of personal jurisdiction is denied.

The Court next turns to the portion of Defendants' motion seeking dismissal under CPLR 3211(a)(7). "On a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Breytman v*

---

[4] An order by Justice Patrick F. McAllister, dated May 20, 2022, contained the official approved 2022 State Senate map (NY St Cts Elec Filing [NYSCEF] Doc No. 670, decision and order, in *Matter of Harkenrider v Hochul*, Sup Ct, Steuben County, index No. E2022-0116CV). Minor revisions were approved in an order dated June 2, 2022, which did not impact Senate District #17 (NYSCEF Doc No. 696, decision and order, in *Harkenrider*). Thus, the redistricting occurred prior to the relevant circulation period for designating petitions (May 21, 2022 to June 10, 2022) (NYSCEF Doc No. 524, order, in *Harkenrider*).

[* 5]

*Olinville Realty*, LLC, 54 AD3d 703, 703-704 [2d Dept 2008]). "Where, as here, evidentiary material is submitted and considered on a motion pursuant to CPLR 3211 (a) (7), and the motion is not converted into one for summary judgment, the question becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one, and unless it has been shown that a material fact claimed by the plaintiff to be one is not a fact at all, and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate" (*YDRA, LLC v Mitchell*, 123 AD3d 1113, 1114 [2d Dept 2014]).

The Court will discuss this portion of Defendants' motion in the following order: (1) breach of contract against all defendants; (2) breach of contract against individual defendants by piercing the corporate veil; and (3) fraud and negligence.

A plaintiff sufficiently pleads a cause of action for breach of contract "by alleging all of the essential elements of such a cause of action: the existence of a contract, the plaintiff's performance pursuant to that contract, the defendants' breach of their contractual obligations, and damages resulting from that breach" (*Canzona v Atanasio*, 118 AD3d 841, 842 [2d Dept 2014]).

Here, Defendants argue that there is documentary evidence refuting Plaintiffs' claim as to their performance, pursuant to CPLR 3211 (a) (1). Defendants contend that they sent three invoices to Plaintiff and on the third and final check, dated June 13, 2022, Plaintiff wrote "Petitions Paid in Full" on the memo line. According to Defendants, this notation indicates that the "transaction between the parties was completed."

"While a court may consider evidentiary material submitted by a defendant in support of a motion to dismiss, the motion should not be granted unless this evidence shows 'that a material fact claimed by the plaintiff to be one is not a fact at all, and unless it can be said that no significant dispute exists regarding it'" (*Reznick v Bluegreen Resorts Mgt., Inc.*, 154 AD3d 891, 892-893 [2d Dept 2017]).

"As a general rule, acceptance of a check in full settlement of a *disputed* unliquidated claim operates as an accord and satisfaction discharging the claim" (*Merrill Lynch Realty/Carll Burr, Inc. v Skinner*, 63 NY2d 590, 596 [1984] [emphasis added]). Here, while Plaintiffs may have acquiesced to Defendants' provision of fewer signatures by signing the check, there is no evidence that Plaintiffs waived any right with respect to the quality or validity of the signatures since that issue was not disputed at the time the final check was issued.

6

[* 6]

Defendants' argument that the contract provided that 1,700 signatures would be collected *or* 95 total shifts deployed is unconvincing and belied by the language in the contract, which provides that 1,000 signatures would be collected through 67 total shifts and 700 signatures would be gathered through bulk collection via 28 total shifts. "Through" and "via" both share a definition: "by way of."[5] Plaintiff sought to obtain sufficient signatures to ensure his name appeared on the ballot. Thus, Defendants' contention that the deployment of 95 shifts alone, without the specified number of signatures, would satisfy performance defies logic.

Moreover, the contract provided that BB LLC would direct canvassers to obtain signatures from *registered* Democratic voters *within* District #17. Plaintiffs' complaint asserts that the Clerk's Report dated June 20, 2022, reflects that 956 signatures were invalidated because they were collected outside of the district. Thus, even assuming Defendants delivered at least 1,700 signatures, Plaintiffs' complaint sufficiently pleads a breach of contract claim for failure to provide signatures that met the contractual requirements.

The Court now turns to the portion of Defendants' motion seeking dismissal of Plaintiffs' breach of contract claim against the individual defendants by piercing the corporate veil. "At the pleading stage, 'a plaintiff must do more than merely allege that [defendant] engaged in improper acts or acted in 'bad faith' while representing the corporation'" (*Cortlandt St. Recovery Corp. v Bonderman*, 31 NY3d 30, 47 [2018], quoting *E. Hampton Union Free Sch. Dist. v Sandpebble Bldrs., Inc.*, 16 NY3d 775, 776 [2011]). "In order for a plaintiff to state a viable claim against a shareholder of a corporation in his or her individual capacity for actions purportedly taken on behalf of the corporation, plaintiff must allege facts that, if proved, indicate that the shareholder exercised complete domination and control over the corporation and abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice" (*E. Hampton Union Free Sch. Dist.*, 16 NY3d at 776 [internal quotation marks and citation omitted]).

Upon review of the complaint, the Court finds that Plaintiff has not alleged that Bond and Bystrov controlled or dominated BB LLC or "that they engaged in acts amounting to an abuse of the corporate form to perpetrate a wrong or injustice against" Plaintiff (*F&R Goldfish Corp. v Furleiter*, 210 AD3d 643, 645 [2d Dept 2022]; *Victory State Bank v EMBA Hylan, LLC*, 169 AD3d 963, 966 [2d Dept 2019]). Moreover, "individual defendants cannot be held liable for [the

---

[5] *See* Merriam-Webster.com Dictionary, through (https://www.merriam-webster.com/dictionary/through); via (https://www.merriam-webster.com/dictionary/via).

[* 7]

corporation]'s contractual obligations merely because they owned and managed [it] or because the [agreement] was executed by [individuals] in such capacity" (*Victory State Bank*, 169 AD3d at 966). Therefore, Plaintiffs' breach of contract claim as asserted against the individual defendants is dismissed.

Lastly, the Court addresses Plaintiffs' fraud and negligence causes of action. "[A] cause of action premised upon fraud cannot lie where it is based on the same allegations as the breach of contract claim" (*Heffez v L & G Gen. Constr., Inc.*, 56 AD3d 526, 527 [2d Dept 2008]). "A present intent to deceive must be alleged and a mere misrepresentation of an intention to perform under the contract is insufficient to allege fraud" (*WIT Holding Corp. v Klein*, 282 AD2d 527, 528 [2d Dept 2001]; *Refreshment Mgt. Servs., Corp. v Complete Off. Supply Warehouse Corp.*, 89 AD3d 913, 914 [2d Dept 2011]). In his complaint, Plaintiff makes a vague reference to "fraudulent activities" and asserts that Defendants' alleged false representations included (a) representing that if Plaintiff made the payment in full, Defendants' services would be performed and completed in a timely manner in compliance with New York State Election Law; (b) representing that the signatures collected were valid; and (c) promising to create a reverse spec. With respect to the first two alleged false representations, the Court finds that they are premised on allegations indistinguishable from Plaintiffs' breach of contract claim. As to the alleged promise to conduct a reverse spec, the Court finds that Plaintiffs have failed to state a cause of action to recover for fraud in the absence of any allegations of scienter (*Crafton Bldg. Corp. v St. James Constr. Corp.*, 221 AD2d 407, 409 [2d Dept 1995] ["[A] cause of action based upon a statement of future intention must allege facts to show that the defendant, at the time the promissory statements were made, never intended to honor or act upon his statements."]).

Where a complaint purports to state a claim alleging negligence, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated" (*Sargent v NY Daily News, L.P.*, 42 AD3d 491, 493 [2d Dept 2007] [internal quotation marks and citations omitted]). In his complaint, Plaintiff alleges that Defendants were negligent in failing to collect signatures within the district, failing to verify that signatures were collected of registered democrats and failing to know that the voters were registered within the district. However, these allegations do not sound in negligence. As Plaintiff himself asserts under his negligence cause of action, these allegations demonstrate a "failure to abide by their *contractual*

[* 8]

*obligation* to collect signatures in a 'workmanlike' manner" (NYSCEF Doc No. 1, complaint at ¶ 71; emphasis added).

In sum, the Court finds that "the allegations of negligence and fraud are the same as those underpinning the breach of contract cause of action, and 'allege[ ] nothing more than a breach of contract and [a breach of] any covenants implied' " (*Heffez*, 56 AD3d at 527, quoting *NY Univ. v Cont. Ins. Co.*, 87 NY2d 308, 318 [1995]). Thus, the branch of Defendants' motion to dismiss the fraud and negligence causes of action is granted.

Accordingly, it is hereby

ORDERED, that Defendants' motion (Mot. Seq. No. 1) is granted to the extent that Plaintiffs' fraud and negligence causes of action are dismissed and Plaintiffs' breach of contract claim against Bond and Bystrov is dismissed.

All other issues not addressed herein are without merit or moot.

This constitutes the decision and order of the Court.

_____

Hon. Ingrid Joseph, J.S.C.

**Hon. Ingrid Joseph**
**Supreme Court Justice**

9